# EXHIBIT A

EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 01/29/2026 05:29:02 PM.
30-2026-01543612-CU-CO-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By J. Esquivel, Deputy Clerk.

Necole Key
451 Discovery Lane #321
Brea, CA 92821
626-598-6647
necolekey@gmail.com

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE — UNLIMITED JURISDICTION

NÉCOLE KEY, an individual,

Plaintiff,

v.

RODNEY DAVID OLIVER, an individual,

Defendant.

Case No.: ___________

30-2026-01543612-CU-CO-CJC
Assigned for All Purposes
Judge Michael Strickroth

COMPLAINT FOR:

Declaratory Relief (Code Civ. Proc., § 1060)

Breach of Written Contract

Breach of the Implied Covenant of Good Faith and Fair Dealing

Accounting

Injunctive Relief (Ancillary)

Unjust Enrichment / Restitution (In the Alternative)

Promissory Estoppel (In the Alternative)

DEMAND FOR JURY TRIAL

## I. INTRODUCTION

This action arises from a written Co-Ownership Transfer Agreement (“Agreement”)

governed by California law, under which Defendant Rodney David Oliver ("Oliver") irrevocably transferred to Plaintiff Nécole Key ("Key") an undivided fifty percent (50%) ownership interest in the master sound recording commonly known as Everlasting Bass ("Master Recording").

Key seeks California contract, property, and equitable relief to enforce her vested co-ownership rights, including: (a) declarations confirming the Agreement's validity and effect; (b) construction of any withdrawal/termination language as prospective only; (c) an accounting of all proceeds attributable to Key's 50% interest; and (d) injunctive relief preventing Oliver from obstructing, diverting, or impairing Key's collection and enforcement rights.

Key does not seek adjudication of federal copyright infringement liability. References to unauthorized or exceeded-scope uses are pleaded solely to establish the existence of proceeds, the need for accounting, routing issues, and interference. Key expressly reserves all claims against non-parties.

Over multiple years, Key performed specialized rights-management work restoring value to Oliver's catalog, including both master-side and composition-side administration (e.g., chain-of-title research, registrations, split corrections, metadata correction, royalty pathway repair, and payor coordination). The parties ultimately memorialized Key's compensation and authority in a single signed written instrument: the Agreement governing the Everlasting Bass master.

Everlasting Bass is the only catalog title for which the parties executed a signed written contract governing Key's compensation and authority. The Agreement contains an entire-agreement provision and supersedes prior oral or informal understandings. It is Key's sole reliable contractual pathway to be paid for the multi-year value-creation work the

parties contemplated.

After that value was restored, Oliver—under third-party settlement pressure and with counsel whose compensation was supported by interests adverse to Key—attempted to misuse a withdrawal/termination mechanism as a retroactive clawback to eliminate Key's vested rights and compensation pathway.

Any re-transfer, rescission, revocation, waiver, or compromise of Key's ownership interest requires a writing signed by Key under 17 U.S.C. § 204(a). Oliver cannot undo a completed transfer through unilateral notice, third-party influence, or settlement arrangements to which Key did not consent.

Key repeatedly attempted to resolve this matter without litigation. Oliver refused to confirm or perform the Agreement as written, making this action necessary.

## II. PARTIES

Plaintiff NÉCOLE KEY is an individual residing in California. Key is a rights-management professional specializing in chain-of-title reconstruction, metadata correction, royalty recovery, enforcement strategy, and catalog monetization.

Defendant RODNEY DAVID OLIVER is an individual residing in California and the original owner/creator of the Master Recording. Oliver executed the Agreement transferring to Key a 50% undivided ownership interest.

Key sues DOES 1–25 under Code Civ. Proc. § 474. Key is informed and believes, and on that basis alleges, that each Doe is responsible in some manner for the events alleged herein. Key will amend this Complaint to allege their true names and capacities when ascertained.

## III. JURISDICTION AND VENUE

Jurisdiction is proper under Article VI, section 10 of the California Constitution.

Venue is proper in Orange County under Code Civ. Proc. § 395 because substantial events, performance, reliance, and harm occurred in this County, and the Agreement was performed in California.

## IV. RESERVATION OF RIGHTS

This Complaint seeks only California contract, property, and equitable relief. Nothing herein waives or compromises any federal or state claims against non-parties.

## V. FACTUAL ALLEGATIONS

### A. The Catalog Was Dormant; Key Restored Value

For years, the catalog—including the Master Recording—was administratively impaired: registrations were incorrect, royalty pathways were blocked, and exploitation went unaddressed.

Over multiple years, Key performed extensive specialized work—substantially unpaid—to restore functionality and value, including chain-of-title research, metadata correction, royalty pathway repair, enforcement strategy, and negotiations with payors and administrators.

Key’s work included both master-side and composition-side administration, including registration and split corrections, metadata repairs, and royalty routing restoration to ensure accurate reporting and payment.

Oliver accepted and relied on Key’s work and benefited from the resulting value and leverage.

A.1 Scope Across 47 Titles; Everlasting Bass Agreement Is the Only Written Compensation Pathway

Key's rights-management work benefitted forty-seven (47) titles in Oliver's catalog, several of which are valuable and commercially significant.

Although Key's work benefitted the broader catalog, Everlasting Bass is the only title for which the parties reduced Key's compensation and authority to a signed written agreement—the Co-Ownership Transfer Agreement governing the Master Recording.

The parties executed the Agreement because payors increasingly required documented authority, and because the Agreement was intended to function as Key's sole reliable contractual pathway for compensation tied to the work the parties contemplated.

These allegations are pleaded solely to establish background, reliance, foreseeability, and damages. Key does not seek adjudication of ownership, accounting, or relief as to the other titles in this action.

B. Oral Understanding Reduced to a Written Transfer

Before April 2025, the parties operated under an oral understanding that Key would be compensated through participation in master-side revenues tied to her work.

As payors increasingly required documented authority, the parties agreed to memorialize their arrangement in writing.

C. The Co-Ownership Transfer Agreement

On or about April 24, 2025, the parties executed the Agreement (Exhibit A), under which Oliver irrevocably transferred to Key a 50% ownership interest in the Master Recording,

together with ownership-incident rights to monetize, collect, and participate in enforcement and recoveries.

The Agreement contains an entire-agreement clause and supersedes prior understandings.

The transfer was complete and effective upon execution. Under 17 U.S.C. § 204(a), any re-transfer, rescission, waiver, or compromise of Key's ownership interest requires a writing signed by Key. Oliver's unilateral "termination" assertions cannot retroactively unwind Key's vested ownership.

D. Composition-Side Work Performed; Clean Separation of Claims in This Action

Key's rights-management work included both master-side and composition-side administration, including correcting registrations and splits, repairing royalty pathways, and coordinating with payors and administrators to ensure accurate reporting and payment.

To allow Oliver to address any composition-side disputes independently—and to keep this action narrowly focused—the parties adopted a "clean cut" structure for purposes of enforcement: Key seeks compensation and enforceable rights in this lawsuit solely through her master-side co-ownership interest in the Everlasting Bass Master Recording under the Agreement, and does not ask this Court to adjudicate composition ownership or composition infringement issues. Key expressly reserves any claims against non-parties.

E. Enforcement and Proceeds Rights

The Agreement grants Key contractual and ownership-incident rights to pursue and collect proceeds attributable to past, present, and future exploitations of the Master Recording, including uses exceeding license scope, and to share in enforcement recoveries.

These rights were essential to protect the asset and the compensation structure the parties

intended.

F. Termination Provision: Prospective Only

Any withdrawal/termination mechanism in the Agreement functions, if at all, as a prospective governance off-ramp. It cannot:

(a) rescind or revoke Key's vested ownership;

(b) extinguish accrued proceeds or accounting rights; or

(c) operate as a retroactive forfeiture.

Only a signed writing from Key could effect a re-transfer or surrender under 17 U.S.C. § 204(a).

G. Third-Party Pressure and Manufactured Dispute

Upon information and belief, third-party payors and affiliates involved in exploitations of the Master Recording influenced or conditioned funding of Oliver's legal representation.

These pressures coincided with Oliver's abrupt reversal regarding Key's rights and the manufactured "termination" dispute.

Third-party demands cannot justify breaching a completed transfer or impairing Key's vested rights.

G.1 Unauthorized Settlements and "Clearance" Attempts Are Ineffective as to Key

Upon information and belief, Oliver and/or persons acting in concert with him pursued or entered settlement, release, clearance, or license arrangements with third parties (including payors, administrators, distributors, labels, or persons asserting adverse claims) concerning exploitations of the Master Recording, and sought to use such arrangements to "resolve," "clear," or "eliminate" disputes affecting revenue routing, enforcement, or distribution.

For avoidance of doubt, "competent proof" of ownership and authority includes, at minimum, documentary chain-of-title for the specific rights asserted and current authority documentation for any representative capacity claimed (e.g., executed assignments, recorded transfers where applicable, governing instruments, trustee/manager appointment documents, corporate resolutions, and/or written authorization empowering the counterparty to license, settle, release, or encumber those rights).

Any settlement, release, license, waiver, encumbrance, or agreement that purports to impair, surrender, transfer, or compromise Key's vested undivided 50% ownership interest in the Master Recording, or Key's accrued and continuing rights to proceeds, accounting, routing, and enforcement recoveries, is ineffective and non-binding as to Key absent:

(i) a written instrument signed by Key effecting a re-transfer, waiver, or authorization as required by 17 U.S.C. § 204(a); and

(ii) competent proof that any counterparty purporting to grant or "clear" rights possessed valid ownership and authority.

Oliver lacks power to unilaterally bargain away, diminish, or encumber Key's vested co-ownership rights by settlement—whether motivated by third-party pressure, funding arrangements, or efforts to expedite payment routing. This conduct further supports the need for declaratory relief, an accounting, and injunctive relief to prevent ongoing interference with Key's ownership-incident rights.

H. Damages and Expectancy

Oliver knew Key's compensation depended on her ability to protect monetization pathways, enforce rights, and maintain payment routing. Oliver knew the Agreement was the parties' only signed written compensation instrument for Key and Key's only reliable contractual pathway to be paid for the work the parties contemplated.

If Oliver obstructs routing, misrepresents Key's ownership, dismantles deals Key preserved, or relies on unauthorized settlements to compromise Key's interest, he is liable for damages according to proof, including unpaid proceeds, lost opportunities, foreseeable consequential harm, and loss of benefit-of-the-bargain expectancy.

VI. CAUSES OF ACTION

1. Declaratory Relief (Code Civ. Proc., § 1060)

Key seeks declarations that:

(1) The Agreement is valid and enforceable;

(2) Key acquired a vested 50% ownership interest upon execution;

(3) Any termination provision operates prospectively only;

(4) Any re-transfer or surrender of Key's interest requires a writing signed by Key under 17 U.S.C. § 204(a);

(5) Key is entitled to collect proceeds attributable to her 50% interest;

(6) Oliver may not obstruct or impair Key's collection or enforcement rights;

(7) Third-party demands cannot retroactively destroy Key's vested rights; and

(8) Any settlement, release, license, waiver, or "clearance" arrangement entered or proposed by Oliver that purports to impair Key's vested 50% interest or accrued proceeds is ineffective and non-binding as to Key absent a writing signed by Key under 17 U.S.C. § 204(a), and absent competent proof of the counterparty's ownership and authority.

2. Breach of Written Contract

Oliver breached the Agreement by repudiating Key's vested rights; attempting to convert a governance mechanism into a retroactive forfeiture; obstructing collection and routing; misrepresenting Key's rights to payors; failing to cooperate as required; and/or attempting to compromise Key's vested interest through unauthorized "settlement" or "clearance" arrangements without Key's written consent.

Key suffered damages according to proof.

3. Breach of the Implied Covenant of Good Faith and Fair Dealing

Oliver exercised discretion in bad faith to deprive Key of the Agreement's benefits after accepting years of Key's labor and value creation.

4. Accounting

Oliver possesses superior knowledge of proceeds, routing, holds, settlements, "clearance" efforts, and distributions. An accounting is necessary to determine amounts owed to Key. The accounting must include all agreements, communications, and payment directions concerning any settlement discussions, releases, "clearance" efforts, holds, or routing changes relating to the Master Recording, including identities of counterparties and all consideration paid or promised, together with all documents Oliver or any counterparty relied upon as proof of ownership and authority for any claimed right to license, settle, release, or encumber rights in the Master Recording.

5. Injunctive Relief (Ancillary)

Oliver's conduct threatens irreparable harm by interfering with routing, chilling enforcement, and impairing Key's ability to protect the asset. Injunctive relief is necessary to prevent further obstruction and require cooperation.

Key seeks an order prohibiting Oliver from entering, implementing, or relying upon any settlement, release, "clearance," license, or instruction to payors that purports to compromise, encumber, or reroute proceeds attributable to Key's vested 50% interest without Key's written consent, and requiring Oliver to notify payors/administrators that any such arrangements are not authorized as to Key.

6. Unjust Enrichment / Restitution (In the Alternative)

If the Agreement is construed to deny Key the intended compensation structure, Oliver would be unjustly enriched by retaining the benefits of Key's labor without payment.

7. Promissory Estoppel (In the Alternative)

Oliver promised long-term participation tied to the Master Recording. Key reasonably relied on those promises. Injustice can be avoided only by enforcing them.

VII. PRAYER FOR RELIEF

WHEREFORE, Key prays for judgment as follows:

For declaratory relief as requested;

For compensatory damages according to proof;

For an accounting and disgorgement of amounts owed to Key attributable to Key's 50% interest;

For injunctive relief preventing obstruction, misrepresentation, diversion, unauthorized routing changes, and unauthorized settlements/clearance arrangements affecting Key's interest;

For restitution and unjust enrichment relief (in the alternative);

For costs of suit and allowable interest; and

For such other and further relief as the Court deems just and proper.

VIII. DEMAND FOR JURY TRIAL

Key demands trial by jury on all issues so triable.

Dated: January 29, 2026

Respectfully submitted,

/s/NÉCOLE KEY

Plaintiff, In Pro Per

Brea, CA 92821

Telephone: (626)598-6647

# EXHIBIT A

Filed in Support of the Accompanying Papers

**Co-Ownership & Master Assignment Agreement**

# CO-OWNERSHIP AGREEMENT

This Co-Ownership Agreement ("Agreement") is made as of April 24,, 2025 ("Effective Date"), by and between:

- **Rodney David Oliver**, residing at 11074 Oso Ave, Chatsworth, CA 91311 ("Oliver"), and
- **Necole Key**, residing at 451 Discovery Lane, Unit 321, Brea, CA 92821 ("Key").

Collectively referred to as the "Parties" or individually as a "Party."

## 1. BACKGROUND

Oliver is the creator and original sole owner of the master sound recording entitled **"Everlasting Bass"** (the "Master Recording").
Oliver now desires to transfer, and Key desires to accept, a fifty percent (50%) undivided interest in the Master Recording.
The Parties wish to set forth their respective rights and obligations as co-owners.

## 2. TRANSFER AND CO-OWNERSHIP

Oliver hereby irrevocably transfers, assigns, and conveys to Key an undivided fifty percent (50%) ownership interest in the Master Recording, including:

- All rights to reproduce, distribute, publicly perform, and otherwise exploit the Master Recording;
- All rights to license and collect royalties or fees;
- All rights to sue for past, present, and future infringement.

The Parties shall each own an undivided 50% interest in the Master Recording.

## 3. DECISION-MAKING AND EXPLOITATION

- Neither Party may grant an exclusive license, assign rights, or sell the Master Recording without the prior written consent of the other Party.

- Either Party may grant non-exclusive licenses individually, provided that all revenue received from such licenses shall be split 50/50.

- The Parties agree to reasonably consult each other regarding opportunities to exploit the Master Recording.

4. REVENUE SHARING

- All revenue generated from the exploitation of the Master Recording shall be divided equally (50% to Oliver, 50% to Key), after deduction of any mutually agreed expenses.

- Each Party shall account to the other Party no less than twice per year and shall pay any amounts due within thirty (30) days of receipt.

5. INFRINGEMENT AND ENFORCEMENT

- Either Party may take action against any infringement of the Master Recording.

- If one Party pursues enforcement independently, that Party shall be entitled to recover its litigation costs first from any recovery, and the balance shall be divided equally.

- The Parties agree to reasonably cooperate in any infringement enforcement actions.

6. TERMINATION OF CO-OWNERSHIP

- **Rodney David Oliver shall have the exclusive right to terminate this Co-Ownership Agreement** at any time by providing thirty (30) days' written notice to Necole Key.

- Necole Key shall have **no independent right** to terminate this Agreement or force a sale.

## 7. GENERAL PROVISIONS

- **Governing Law:** This Agreement shall be governed by and construed in accordance with the laws of the State of California.
- **Entire Agreement:** This document constitutes the entire agreement between the Parties regarding the subject matter hereof and supersedes any prior oral or written agreements.
- **Amendments:** Any modifications must be in writing and signed by both Parties.
- **Severability:** If any provision is found invalid, the remainder of the Agreement shall remain in effect.
- **Counterparts:** This Agreement may be executed in counterparts, each of which shall be deemed an original.

**IN WITNESS WHEREOF**, the Parties have executed this Co-Ownership Agreement as of the Effective Date

**Rodney David Oliver**
Date: 04/28/2025

**Necole Key**
Date: 04/28/2025

DigiSigner

# Audit Trail

DigiSigner Document ID: 3edc3053-0718-4be1-9d71-b36fefd27f70

| Signer | Signature |
|---|---|
| Email: necolekey@gmail.com<br>IP Address: 2603:8000:1002:e6bf:9fef:e420:bd47:7dd0 |  |
| IP Address: 2607:fb91:441:8a72:515:6d14:3445:9006 |  |

| Event | User | Time | IP Address |
|---|---|---|---|
| Upload document | necolekey@gmail.com | 4/28/25 1:17:12PM EDT | 2603:8000:1002:e6bf:9fef:e420:bd47:7dd0 |
| Open document | necolekey@gmail.com | 4/28/25 1:17:16PM EDT | 2603:8000:1002:e6bf:9fef:e420:bd47:7dd0 |
| Sign document | necolekey@gmail.com | 4/28/25 1:19:25PM EDT | 2603:8000:1002:e6bf:9fef:e420:bd47:7dd0 |
| Close document | necolekey@gmail.com | 4/28/25 1:19:25PM EDT | 2603:8000:1002:e6bf:9fef:e420:bd47:7dd0 |
| Send for signing | necolekey@gmail.com | 4/28/25 1:19:42PM EDT | 2603:8000:1002:e6bf:9fef:e420:bd47:7dd0 |
| Open document | unknown | 4/28/25 1:39:42PM EDT | 2607:fb91:441:8a72:515:6d14:3445:9006 |
| Sign document | unknown | 4/28/25 1:40:32PM EDT | 2607:fb91:441:8a72:515:6d14:3445:9006 |
| Close document | unknown | 4/28/25 1:40:32PM EDT | 2607:fb91:441:8a72:515:6d14:3445:9006 |

# EXHIBIT B

Filed in Support of the Accompanying Papers

**Text Messages Between Key and Oliver (Set 1)**

RODNEY-O

I really don't think people understand what I do or what it takes I seriously don't think they could comprehend

May 8, 9:40 PM

R

They don't understand and I wouldn't expect them to honestly!

May 8, 9:41 PM

They dont pay me enough and havent earned my devotion lol

May 8, 9:41 PM

I get it this is our retirement plan.

R

Doesn't come around to often

May 8, 9:43 PM

Type a message


RODNEY-O
Jun 13, 2:26 PM
Rodney this is money you didn't even know you lost and money they would have never gave you if i didn't work the way i do. So give me some mercy i do allot
Jun 13, 2:32 PM
R
Thx for reminding me!
Jun 13, 2:34 PM
Lol
Jun 13, 2:46 PM
R
I thought that might make you laugh!!
Love u Nick!!!
Jun 13, 2:47 PM
Type a message

RODNEY-O

Apr 13, 1:04 PM

R

Thank you for seeing this shit through Nick I appreciate you more than you could know!
I will beat that bitch down on April 24th!!

Apr 13, 10:42 PM

Read this is made the font HUGE

https://docs.google.com/document/d/16VTxk6GeEto6oCYIcOqnJ1Z3Pr8jE0tHm1OsRk0Zc_A/edit?usp=drivesdk

Apr 13, 11:31 PM

Search

Type a message

# EXHIBIT C

Filed in Support of the Accompanying Papers

**Text Messages Between Key and Oliver (Set 2)**

← RODNEY-O

I was cautious at some moments but right now its high alert

May 27, 3:05 PM

You need to write this down somewhere in writing

If you die that your assets go to ......

That way if anything happens to one of us we can still fight without any delay

I will write it on my end as well

May 27, 3:07 PM

R 👍

May 27, 3:08 PM

Am serious and give the letter to Re

May 27, 3:08 PM

Just like i felt something was off in the beginning of this deal and started making sure you were protected

The same alarms but even stronger went off right now

May 27, 3:24 PM

**LETTER OF OWNERSHIP AND SUCCESSION INTENT**
**By: Necole Key**
**Date:** [Insert Today's Date]

**Subject:** Ownership and Succession of *Everlasting Bass* Sound Recording

I, **Necole Key**, as co-owner of the *Everlasting Bass* sound recording, confirm the following regarding my ownership interest and succession intentions:

---

**1. Current Ownership**

As of the date of this letter, ownership of the *Everlasting Bass* sound recording is held equally between:

- **Rodney David Oliver** (50%)
- **Necole Key** (50%)

---

**2. If I (Necole Key) Pass Away Before Rodney Oliver**

In the event of my passing prior to Rodney David Oliver:

- My 50% ownership share of the *Everlasting Bass* sound recording shall automatically **revert to Rodney David Oliver**.
- Rodney may then **exercise full control over the master recording**, and may, **at his sole discretion**, allocate any portion of royalties or ownership interests derived from my former share to **my daughters or legal heirs**, as he sees fit and deems appropriate.

---

**3. If Rodney David Oliver Passes Away Before Me**

If Rodney passes before me:

- I will retain my 50% ownership share **as-is**, **in order to be able to protect and manage my rights, interests, and the legacy of the *Everlasting Bass* sound recording**.
- Rodney's 50% shall pass in accordance with his will or estate plan. If no such directive exists, I will recognize his daughters as his intended beneficiaries and will cooperate with any legally binding probate or estate instructions to ensure their interests are respected.

---

**4. If We Both Pass Away**

If both Rodney and I pass away:

- My 50% ownership shall transfer to **my daughters**, whom I trust to carry forward the creative and business legacy of the *Everlasting Bass* sound recording.
- **If, for any reason, my daughters are unable or unwilling to assume ownership**, then my 50% share shall transfer to **Rodney Oliver's legal heirs** as determined by applicable estate law.
- In that event, I direct that **a percentage of royalties and/or ownership interest** from my share shall still be **allocated to my daughters**, in recognition of their personal and familial connection to the work.

---

**5. Intent and Legal Understanding**

Let me know any edits

This is what i am putting in writing now

May 27, 3:43 PM

# EXHIBIT D

Filed in Support of the Accompanying Papers

**Text Messages Between Key and Oliver (Full Compilation)**

RODNEY-O

I made Everlasting Bass in 1985 and have never been sued over this song for as long as it's been out. My rights manager Necole Key has always handled my business for me for the last 5 to 6 years and was keeping me informed of what was going on with the deal with epic records. When they sent over the song it was only 2 minutes but nowadays songs are short like that but to my surprise when it was released Kendrick Lamar was on it as well.. now I'm not saying that's a bad thing but if your going to use my song I would expect Epic records to be fully transparent and they was not.. we also told them that we was suppose to be partners in this new song and that's far from what happened.
We told them when they eat we eat. We never finalized the deal and was only given a short form agreement and never received the long form.
When we pressed them about this issue they started telling us there was a claim against us. I found it strange that they would sue me and not go after Epic records who held all of the cards. After I hired foxx Rothschild my rights manager was telling them that the Trust did not own the copyright to the song and they never pushed Dorothy Weber or the trust to prove it. I am not a lawyer but I would think that would be the first thing you should do to have the lawsuit thrown out, not to get it kicked out of New York just to have it refiled in California. I have seen the correspondence between Rob Finan and Dorothy Weber and to me it's clear that they have a clear agenda and that's to steal my ownership and strip me from making any money off of something I've owned for 30 years plus even if they do own the copyright the Bassline they are saying I stole is not in the sheet music I am not a attorney but I feel if you haven't done anything wrong it's not hard to defend yourself but this case is showing me that's not the reality of it. I learned all my copyright skills from my rights manager Necole Key and my lawyer and the record companies don't like her because she goes by the law and not industry standards. Thx for your time.

R

Jul 30, 9:19 PM

Send a message

# EXHIBIT E

Filed in Support of the Accompanying Papers

**Attorney Communications and Internal Case Materials**

← Find...

626-598-6647

On Tue, Oct 21, 2025 at 12:02 AM Kenneth Freundlich <ken@freundlichlaw.com> wrote:
[Quoted text hidden]

---

**Kenneth Freundlich** <ken@freundlichlaw.com> Tue, Oct 21, 2025 at 12:39 AM
To: Nécole Key <necolekey@gmail.com>, Hugh Rosenberg <hugh@freundlichlaw.com>, Rodney <rodneyocali@yahoo.com>

I am Rodney's lawyer period.

You are no longer authorized on his behalf to act for any purpose.

And now part of my job is to get you out of the middle of his case and anything to do with Everlasting Bass or the Kendrick Lamar derivative which includes handling your baseless case for which you do not have standing nor any substantive ground.

You were subpoenaed in the first case, and we appreciate your compliance with that. You have done nothing but to intervene where you don't belong and complicate this matter needlessly. That includes making it more expensive for Rodney.

We once again implore you for everyone's sake to dismiss your action.

All of Rodney's rights are reserved and none are waived.

Kenneth D. Freundlich
FREUNDLICH LAW, APC
16133 Ventura Blvd. Suite 645
Encino, CA 91436
ph1:(818) 377-3790
ph2:(310) 275-5350
ken@freundlichlaw.com

P Please consider the environment before printing this e-mail

The information contained in this e-mail transmission, including any previous messages or attachments to it, is intended only for the personal and confidential use of the recipient(s) named above. This message contains information that may be an attorney-client

# EXHIBIT F

Filed in Support of the Accompanying Papers

**Sony Music Publishing Backend Advance Correspondence**

Like That lawsuit

To You, Raichilson, Ryan, Rodney

Necole,

Respectfully, making false and unfounded threats and accusations against Sony Music Publishing ("SMP") is not going to help Rodney or his defense of this lawsuit, nor will it help his relationship with SMP.

Per our discussion on Tuesday, we strongly recommend that Rodney immediately retain a New York lawyer to defend him in the lawsuit. To assist with the defense, SMP will agree to contribute up to $425,000 in legal fees from a lawyer or law firm acceptable to SMP on a recoupable basis as a pre-payment of Rodney's remaining Backend Advance, as that term is defined in paragraph 9.02(b) of the June 1, 2024 agreement between SMP and Hood Muscle, LLC f/s/o Rodney Oliver p/k/a "Rodney O," as set forth below:

image

There is $425,000 of the Backend Advance remaining because SMP prepaid $25,000 in December 2024 to Fox Rothschild per Rodney's request.

The lawyer will need to be retained (subject to SMP's prior written approval) in advance of the May 16 deadline for service of discovery requests. Once retained, the lawyer should send their invoices to both Rodney and SMP, and SMP will pay the lawyer directly, subject to Rodney's prior signature on additional prepayment acceptance agreements (in the same form as the one he signed in December). Please note that SMP will not contribute to any claims or lawsuits that Rodney may seek to pursue against Epic Records, Sony Music Entertainment, any other Sony entity, or anyone else affiliated with "Like That."

Please let us know by the end of the week the name(s) of the New York lawyers Rodney would like to consider retaining to defend him.

Please don't hesitate to contact us if you have any questions or would like to discuss.

Best regards,
David

Reply

# EXHIBIT G

Filed in Support of the Accompanying Papers

**Freundlich Law Invoice No. 3117 and Trust Ledger**

***Freundlich Law, APC***
16133 Ventura Blvd.
Suite 645
Encino, CA 91436 USA

Ph:(310) 275-5350 Fax:(310) 275-5351

Rodney Oliver
CA
USA

November 6, 2025

File #: 940-001

**Attention:**

Inv #: 3117

**RE:** Barry WHite Trust Litigation

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|---|---|---|---|---|
| Oct-07-25 | Call with DW and JH re various matters; call with Rodney O re same; research Rule 11 and intervention and separate claim against Key | 1.00 | 725.00 | KDF |
| | Settlement Discussion | 0.50 | 225.00 | HHR |
| Oct-08-25 | Reviewed case status | 0.10 | 57.50 | JAG |
| Oct-09-25 | Dealing with Rodney Aff. and Rule 11 motion | 0.50 | 362.50 | KDF |
| Oct-10-25 | Review Warner production and further analyze title issues | 1.00 | 725.00 | KDF |
| | Discovery Review re: chain of title | 0.50 | 225.00 | HHR |
| | Reviewed third-party discovery | 0.10 | 57.50 | JAG |
| Oct-13-25 | Working on BASS claim | 0.50 | 362.50 | KDF |
| | Call with attorney representing "Bass" artist | 0.20 | 90.00 | HHR |
| | Reviewed case status | 0.10 | 57.50 | JAG |
| Oct-23-25 | Bifurcation, Sanctions in Abeyance Research; Drafting Responses to Weber's Letters | 3.30 | 1,485.00 | HHR |
| Oct-24-25 | Researching Chose in Action and Copyright | 0.80 | 360.00 | HHR |

| | | | | |
|---|---|---|---|---|
| Oct-27-25 | Dealing With Key emails and calls with Rodney and Anterinie and ___ to try to resolve Key; calls with D Weber re Rodney being brought into Case 2 | 3.20 | 2,320.00 | KDF |
| | Case Discussion, Call with Client and Atron, Drafting Complaint Against Necole | 3.30 | 1,485.00 | HHR |
| | Reviewed emails re: case status; reviewed case documents; discussed case with K. Freundlich | 0.20 | 115.00 | JAG |
| Oct-28-25 | Research file and draft motions for intervention and to dismiss Key lawsuit | 6.20 | 4,495.00 | KDF |
| | Reviewed emails re: case status | 0.10 | 57.50 | JAG |
| | Reviewed case status | 0.20 | 115.00 | JAG |
| Oct-29-25 | Review Court decision and revise MTD and MTI | 2.50 | 1,812.50 | KDF |
| | Meeting with Bennett | 0.60 | 270.00 | HHR |
| | Reviewed motion to dismiss and motion to intervene; discussed case with K. Freundlich | 0.80 | 460.00 | JAG |
| | Reviewed case status | 0.10 | 57.50 | JAG |
| Oct-30-25 | Review Key new motion; working on MTD and MTI; call with DW re meet and confer and respond to settlement proposal; Call with Rod and Anterine | 4.20 | 3,045.00 | KDF |
| | Dorothy Weber call, Rodney O call, Case Discussion | 1.10 | 495.00 | HHR |
| | Reviewed motions; discussed case with K. Freundlich | 0.80 | 460.00 | JAG |
| Oct-31-25 | Working on MTD and Intervention; Preparing for expert depos | 1.30 | 942.50 | KDF |
| | Editing Motions to Intervene, Dismiss | 1.20 | 540.00 | HHR |
| | Reviewed motions; discussed case with K. Freundlich | 2.70 | 1,552.50 | JAG |

| | | | | |
|---|---|---|---|---|
| Nov-02-25 | Deal; with N Key emails; meet with Rodney O in Vegas | 1.00 | 725.00 | KDF |
| Nov-03-25 | Prepare for N Key meet and confer and Key Meet and confer re N Key subpoena; review notes from J Bennett | 2.00 | 1,450.00 | KDF |
| | Drafting, Editing Motions to Interview and Dismiss; Meet and Confer with Necole, Dorothy | 4.40 | 1,980.00 | HHR |
| | Reviewed case law; discussed case with K. Freundlich; reviewed emails re: case status | 1.50 | 862.50 | JAG |
| Nov-04-25 | Working on Motion to intervene in Case 2; begin preparing for expert deposition while simultaneously trying to settle matter; calls with client, DP of SMP and DW and JH of Weber firm and settle case; begin outline of SA | 5.50 | 3,987.50 | KDF |
| | Drafting, Editing Motion to Dismiss | 4.80 | 2,160.00 | HHR |
| | Reviewed case law and discussed case with K. Freundlich | 3.00 | 1,725.00 | JAG |
| Nov-05-25 | Preparing for depositions and then holding with settlement; draft settlement agreement and then switch to revising DW's agreement; emails and calls all around; meet with RO | 6.20 | 4,495.00 | KDF |
| | Editing, Finalizing Motions to Intervene and Dismiss, Rodney Declaration | 4.70 | 2,115.00 | HHR |
| | Totals | 70.20 | $42,455.00 | |

**DISBURSEMENTS**

| | | | |
|---|---|---|---|
| Oct-12-25 | ASAP Inv# 11460: Epay confirmation CB41D8ZN | 189.40 | |
| | Totals | $189.40 | |
| | **Total Fee & Disbursements** | | **$42,644.40** |
| | Previous Balance | | 55,391.60 |
| | Previous Payments | | 55,391.60 |

| | |
|---|---|
| **Balance Now Due** | **$42,644.40** |

TAX ID Number 92-1512310

**PAYMENT DETAILS**

| | | |
|---|---|---|
| Oct-14-25 | On Account | 55,391.60 |
| | **Total Payments** | **$55,391.60** |

**TRUST STATEMENT**

| | | Disbursements | Receipts |
|---|---|---|---|
| | Trust Balance Forward | | 50,000.00 |
| Oct-14-25 | Received From: Sony Music Pub Co<br>Rodney O account | | 55,391.60 |
| | Paid To: Freundlich Law, APC<br>On Account | 55,391.60 | |
| | Total Trust | $55,391.60 | $105,391.60 |
| | **Trust Balance** | | **$50,000.00** |