# EXHIBIT C

EXHIBIT C

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

---

**NÉCOLE KEY,**

**Plaintiff–Appellant,**

**v.**

**THE BARRY WHITE FAMILY TRUST, SONY MUSIC ENTERTAINMENT, UNIVERSAL MUSIC GROUP, ROB FINAN, DOROTHY WEBER, NAYVADIUS WILBURN p/k/a FUTURE, LELAND WAYNE p/k/a METRO BOOMIN, KENDRICK DUCKWORTH p/k/a KENDRICK LAMAR, and JOHN DOES 1–10,**

**Defendants–Appellees.**

**Case No. 26-159**

---

**On Appeal from the United States District Court**

**for the Southern District of New York**

**Case No. 1:25-cv-03602 (Hon. Denise L. Cote)**

**APPELLANT'S OPENING BRIEF**

**NÉCOLE KEY (Pro Se)**

**451 Discovery Lane, Unit 321**

**Brea, CA 92821**

**(626) 598-6647**

**necolekey@gmail.com**

# TABLE OF CONTENTS

Corporate Disclosure Statement ....................................... 1

Jurisdictional Statement ................................................ 2

Related Case Statement ............................................... 4

Preliminary Statement ................................................. 5

Summary of the Argument ........................................... 6

Statement of the Case .................................................. 8

Procedural History ...................................................... 9

Standard of Review .................................................... 11

Argument ............................................................. 12

I. This Case Presents a Sequencing Error: Standing Is Determined at Filing ........................................................... 12

II. The District Court Improperly Resolved Merits Issues Under the Label of Jurisdiction ....................................... 14

III. The District Court Erred in Declaring the Case Moot Because Retrospective Relief Remained Available ............ 17

IV. Oliver's Voluntary Dismissal Did Not Extinguish Appellant's Claims or Defeat Jurisdiction ............................ 20

V. The District Court Failed to Resolve Threshold Authority and Representation Issues .......................................... 22

VI. On Remand, the Court Should Require Proof of Authority and Reassign the Case ............................................... 24

Relief Requested ....................................................... 25

Certificate of Compliance ............................................ 26

## TABLE OF AUTHORITIES

Cases

Already, LLC v. Nike, Inc., 568 U.S. 85 (2013) ................ 17–18

Arbaugh v. Y & H Corp., 546 U.S. 500 (2006) ................. 14

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ........................... 14

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .............. 14

Chafin v. Chafin, 568 U.S. 165 (2013) ............................ 11, 17, 19

Davis v. Blige, 505 F.3d 90 (2d Cir. 2007) ..................... 19

Davis v. FEC, 554 U.S. 724 (2008) .............................. 12, 20

DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104 (2d Cir. 2010) .... 15

Erickson v. Pardus, 551 U.S. 89 (2007) ......................... 11

Friends of the Earth v. Laidlaw, 528 U.S. 167 (2000) ......... 17

John v. Whole Foods Mkt. Grp., Inc., 858 F.3d 732 (2d Cir. 2017) ... 15, 17

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ......... 11–12

Lynch v. City of New York, 952 F.3d 67 (2d Cir. 2020) ....... 15

MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377 (2d Cir. 2006) ... 11, 22

Navarro Sav. Ass'n v. Lee, 446 U.S. 458 (1980) ............... 24

SM Kids, LLC v. Google LLC, 963 F.3d 206 (2d Cir. 2020) .... 15–16, 22

Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269 (2008) ... 20

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998) ... 14

Triestman v. Fed. Bureau of Prisons, 470 F.3d 471 (2d Cir. 2006) ... 11

Uzuegbunam v. Preczewski, 592 U.S. 279 (2021) .............. 18–19

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Second Circuit Local Rule 26.1.1, Appellant Nécole Key states that she is an individual proceeding pro se. She is not a corporation, does not issue stock, and has no parent corporation or publicly held corporation owning 10% or more of any interest in her.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arose under the Copyright Act, 17 U.S.C. § 101 et seq., and related federal law. The complaint alleged claims arising from ownership, enforcement, and infringement of rights in the master sound recording Everlasting Bass, together with claims for retrospective monetary relief based on completed injuries. ECF No. 1.

The district court entered an order dismissing the action for lack of standing on December 5, 2025. ECF No. 81. The district court then entered a post-judgment order on December 17, 2025, adhering to dismissal on mootness grounds after acknowledging that standing is determined at the time of filing. ECF No. 84. The district court denied further post-judgment relief on January 7, 2026. ECF No. 88.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the appealed orders disposed of all claims and ended the case in the district court.

Appellant timely filed a notice of appeal on January 15, 2026. See ECF No. ___. The appeal is also timely as to the orders at ECF Nos. 81, 84, and 88 because the notice of appeal was filed within the time permitted by Federal Rule of Appellate Procedure 4(a), measured from the district court's final post-judgment order disposing of the last pending request for relief.

I reviewed the Over.pdf version. This is now in real appellate brief form.

What you need now is not more arguments — you need tight front sections because judges read these first and often decide the case from them:

## RELATED PROCEEDING

Related California Proceeding. Appellant also filed a separate California action against Rodney David Oliver in Orange County Superior Court, Case No. 30-2026-01543612-CU-CO-CJC, on January 29, 2026. That case seeks California contract, property, accounting, and equitable relief arising from the April 24, 2025 Co-Ownership Transfer Agreement, including declarations that the Agreement validly transferred to Appellant a 50% interest in the Everlasting Bass master and that any termination language operates prospectively only. The California complaint expressly states that it does not seek adjudication of federal copyright infringement liability and reserves claims against non-parties. The California action therefore does not moot this appeal; it concerns separate state-law relief against Oliver, while this appeal challenges the district court's federal jurisdictional dismissal.

Case: 26-159, 03/31/2026, DktEntry: 59.1, Page 10 of 38

## PRELIMINARY STATEMENT

This appeal presents a sequencing error. The district court acknowledged that Article III standing is determined at the time the complaint is filed, yet dismissed this case based on post-filing events and disputed ownership issues, and then declared the case moot even though retrospective damages remained available. That sequence conflicts with the Supreme Court's time-of-filing rule, this Court's Rule 12 jurisprudence, and basic principles of redressability.

At the time this action was filed, Appellant alleged (1) a written pre-suit transfer conveying ownership and enforcement rights, (2) completed economic injury that had already occurred, and (3) reputational and professional injury caused by Defendants' actions and accusations. Any one of these injuries was sufficient to establish Article III standing at the pleading stage. Together, they required the case to proceed to discovery and merits determination.

Instead, the district court relied on post-filing events, disputed termination claims, and ownership arguments to conclude that Appellant's injuries were "no longer" hers, while simultaneously stating that it was unnecessary to determine whether the underlying transfer agreement was valid. That was a merits determination framed as a jurisdictional ruling, followed by a mootness ruling that failed to analyze redressability despite the continued availability of retrospective damages.

This Court should vacate the judgment and remand because the district court resolved disputed merits issues at the pleading stage, relied on post-filing events to retroactively eliminate standing, and declared the case moot even though damages claims remained live.

## SUMMARY OF THE ARGUMENT

This case presents three related legal errors.

First, the district court violated the time-of-filing rule by dismissing for lack of standing based on post-filing events and a disputed termination narrative. Standing is determined at the time suit is filed. Once jurisdiction attaches, later events may affect the merits or the ultimate allocation of recovery, but they do not retroactively eliminate standing that existed when the case began.

Second, the district court resolved disputed ownership and contract issues at the pleading stage. When standing depends on the validity or scope of an assignment, that dispute goes to the merits, not jurisdiction. By treating a disputed assignment and termination narrative as a jurisdictional defect, the court improperly converted a merits dispute into a Rule 12 dismissal.

Third, the district court erred in declaring the case moot. Claims for retrospective damages keep a case live, and the court did not analyze whether effectual relief remained available. Because Appellant alleged completed economic and reputational injuries that occurred before suit was filed, damages and declaratory relief remained available and the case was not moot.

These errors were procedural, not factual. The question on appeal is not who ultimately owns the claims, but whether the district court had the power to dismiss

the case at the pleading stage based on post-filing events and disputed merits issues. Under settled law, it did not.

## STATEMENT OF THE CASE

### A. Nature of the Case

This case arises from disputes concerning ownership, licensing, and enforcement rights related to the musical work and sound recording "Everlasting Bass," and derivative works that incorporated or exploited that recording.

Before filing suit, Appellant received a written transfer conveying an ownership interest and the right to enforce accrued and future infringement claims. At the time suit was filed, Appellant alleged that Defendants had exploited the work without proper authorization, interfered with licensing opportunities, and caused economic and reputational harm. The Complaint sought damages, declaratory relief, and other retrospective remedies.

The district court did not resolve the ownership dispute on the merits. Instead, it dismissed for lack of standing based on post-filing events and later declared the case moot, concluding that the injuries were "no longer" Appellant's while stating that it was unnecessary to determine whether the transfer agreement was valid.

This appeal followed.

## PROCEDURAL HISTORY

PROCEDURAL HISTORY

This action was filed on April 29, 2025, to address the alleged unauthorized exploitation of the musical work Everlasting Bass in connection with the release and exploitation of the song “Like That.”

1. The Licensing Dispute and Accrued Injuries

In March 2024, Appellant negotiated a preliminary license with Epic Records for the use of Everlasting Bass in a track by Future. Appellant alleged that the license was limited to a single master use and did not authorize additional versions or derivative releases featuring additional artists. When the version featuring Kendrick Lamar was released, Appellant alleged that it exceeded the negotiated scope.

Appellant further alleged that when she attempted to obtain finalized split confirmations and a long-form agreement, payment was withheld and compliance with the agreed terms was delayed. During this period, Appellant alleged concrete economic and professional harms, including the loss of a publishing deal valued at approximately $2.2 million, withheld licensing revenue and royalties, reputational harm affecting her licensing and enforcement work, and the loss of commissions

Case: 26-159, 03/31/2026, DktEntry: 59.1, Page 16 of 38

and business opportunities connected to enforcement and licensing activities. ECF No. 1 ¶¶ 49, 54, 71.

Those alleged harms were pleaded as completed injuries existing at the time suit was filed.

2. The Written Transfer and Enforcement Rights

The complaint was filed together with a written agreement executed on April 24, 2025, which Appellant alleged transferred to her an ownership interest together with enforcement rights, including the right to pursue infringement claims and recover damages arising from unauthorized uses of the master recording. Appellant relied on that signed writing and her accrued economic injuries as the basis for standing at the commencement of the action.

3. Threshold Authority and Rule 17 Issues

Early in the litigation, Appellant raised Rule 17 and trustee-authority issues, requesting that Defendants identify the duly authorized trustee or trustees and provide sworn authority confirming who had authority to act on behalf of the Barry White Family Trust. See Dkts. 16, 17, 30. Appellant argued that these were threshold authority and capacity issues that should be resolved before substantive motions were decided.

Those authority issues were not resolved before dismissal.

4. Post-Filing Events and the Standing Dismissal

After the case was filed, Defendants advanced a new narrative that the written transfer was invalid and had been terminated in September 2025. The district court ultimately dismissed the case on December 5, 2025, for lack of standing, relying on post-filing events and disputed ownership issues rather than the allegations existing at the time of filing. ECF No. 81.

When Appellant sought relief and pointed out that standing is measured at filing, the district court acknowledged that principle but concluded that the case was moot because the injuries were "no longer" Appellant's. ECF No. 84. The court later denied Rule 60 relief. ECF No. 88.

This appeal followed.

JANUARY 2, 2026 FILED CALIFORNIA STATE LAWSUIT

## STANDARD OF REVIEW

The district court's dismissal for lack of subject-matter jurisdiction is reviewed de novo. Lujan v. Defenders of Wildlife, 504 U.S. 555, 570 n.5 (1992). Whether a case is moot is also reviewed de novo. Chafin v. Chafin, 568 U.S. 165, 172 (2013). To the extent the district court resolved issues concerning intervention, party status, or case-management decisions, those rulings are reviewed for abuse of discretion, but any underlying legal conclusions are reviewed de novo. MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 389 (2d Cir. 2006).

Because Appellant proceeded pro se, the district court was required to construe her filings liberally and interpret them to raise the strongest arguments they suggested. Whether the district court applied the correct legal standard to a pro se litigant's filings is reviewed de novo. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474–75 (2d Cir. 2006); Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Case: 26-159, 03/31/2026, DktEntry: 59.1, Page 19 of 38

## ARGUMENT

### I. THIS CASE PRESENTS A SEQUENCING ERROR: THE DISTRICT COURT ACKNOWLEDGED THAT STANDING IS DETERMINED AT FILING BUT DISMISSED BASED ON POST-FILING EVENTS AND DISPUTED MERITS ISSUES

This appeal concerns a sequencing error. Article III standing is determined at the time the complaint is filed, not by later developments. Lujan v. Defenders of Wildlife, 504 U.S. 555, 570 n.5 (1992); Davis v. FEC, 554 U.S. 724, 734 (2008). Once jurisdiction attaches, later events may affect the merits, the available relief, or the ultimate allocation of recovery, but they do not retroactively eliminate standing that existed when the action commenced.

The district court acknowledged this rule, stating that "standing is assessed at the time the action is filed." But the court nevertheless dismissed because it concluded that the injuries were "no longer" Appellant's, even while stating that it was "unnecessary to determine whether the April 24 agreement was a valid contract."[1]

That sequence cannot be reconciled with Article III. If standing is determined at

[1] The district court stated that "standing is assessed at the time the action is filed." ECF No. 84 at __. The court also stated that it was "unnecessary to determine whether the April 24 agreement was a valid contract." ECF No. 81 at __. The court nevertheless concluded that the injuries were "no longer" Appellant's based on post-filing events and later disputes concerning that same agreement. Id. This sequence reflects the use of post-filing merits issues to retroactively defeat standing, which Article III does not permit. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 570 n.5 (1992); Davis v. FEC, 554 U.S. 724, 734 (2008

filing, and if the validity of the April 24 agreement could not be decided at the jurisdictional stage, then later events concerning that same agreement could not be used to retroactively eliminate jurisdiction that existed when the case began.

At filing, Appellant alleged multiple independent bases for Article III standing: (1) a signed written transfer executed before suit conveying ownership and enforcement rights; (2) completed economic injury already suffered by the time the complaint was filed; and (3) reputational and professional injury arising from defendants' accusations and the use of those accusations to impair Appellant's business and professional standing. Any one of these theories was sufficient at the pleading stage. Taken together, they foreclose dismissal for lack of jurisdiction.

## II. THE DISTRICT COURT IMPROPERLY RESOLVED MERITS ISSUES AT THE PLEADING STAGE UNDER THE LABEL OF JURISDICTION

Even if this Court looks past the district court's time-of-filing error, the dismissal still cannot stand because the court resolved disputed merits questions at the pleading stage. That is not permitted under Rule 12.

A complaint need only allege enough factual matter to state a plausible claim for relief; it need not prove the case at the outset. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56, 570 (2007). At the pleading stage, the court must accept well-pleaded

Case: 26-159, 03/31/2026, DktEntry: 59.1, Page 21 of 38

factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020). And where the complaint alleges concrete economic injury and a pre-suit transfer of rights, dismissal is improper merely because the defendant disputes those allegations or offers a competing narrative. See John v. Whole Foods Mkt. Grp., Inc., 858 F.3d 732, 736–39 (2d Cir. 2017).

That is especially true where the dispute concerns ownership, assignment, authority, intent, scope, or termination of a contract. Those are classic merits questions. They may ultimately defeat the claim, but they do not authorize dismissal at the threshold merely because defendants contest them. This Court made that clear in SM Kids, LLC v. Google LLC, holding that a dispute over the continued validity of an assignment went to the merits, not Article III jurisdiction. 963 F.3d 206, 212–14 (2d Cir. 2020). The same principle governs here.

The district court's own words show that it crossed that line. The court used fact-weighing language, including "no evidence," and relied on later factual developments and later litigation positions to conclude that Appellant could not proceed.[1] But "no evidence" is not Rule 12 language. It is merits language. At the pleading stage, the question was not whether Appellant had already proven her

Case: 26-159, 03/31/2026, DktEntry: 59.1, Page 22 of 38

claims; it was whether she had plausibly alleged a sufficient legal interest and concrete injury. She did.

The court had earlier recognized the correct sequence, stating that the underlying dispute was "not properly described as one of subject matter jurisdiction" and "can be the subject of a summary judgment motion."[2] That was correct. The question whether the April 24 agreement was valid, enforceable, terminable, pretextual, or later displaced is precisely the sort of issue ordinarily tested through discovery, summary judgment, or trial. It is not properly resolved by weighing post-filing declarations against the complaint at the threshold.

Nor could the court avoid that conclusion by characterizing the dispute as jurisdictional. The Supreme Court has repeatedly cautioned against "drive-by jurisdictional rulings" that treat merits defects as jurisdictional barriers. Arbaugh v. Y & H Corp., 546 U.S. 500, 511 (2006); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89–90 (1998). A court may not convert an ordinary dispute over contractual rights, ownership, or authority into a jurisdictional defect simply by labeling it so. SM Kids, 963 F.3d at 212–14.

---

[2] The court's earlier statement that the dispute was "not properly described as one of subject matter jurisdiction" and "can be the subject of a summary judgment motion" is important because it shows the court recognized the correct procedural framework before later departing from it.

Case: 26-159, 03/31/2026, DktEntry: 59.1, Page 23 of 38

The procedural posture matters[3] here. Appellant alleged a signed pre-suit transfer, enforcement rights, and already-accrued injury. Defendants responded with accusations that the agreement was invalid, contrived, or later undone. But under Rule 12, the court was not permitted to credit defendants' competing version over Appellant's allegations. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (review on a motion to dismiss is confined to the complaint, attached documents, incorporated materials, and narrow categories of properly considered materials). To the extent the district court relied on later declarations, later factual assertions, and later litigation conduct to reject the complaint's allegations, it exceeded the bounds of Rule 12.

That error was not harmless. By deciding disputed contractual and ownership issues prematurely, the district court deprived Appellant of the ordinary litigation process for testing those issues. Discovery never occurred. Summary judgment standards were never applied. The court instead treated contested factual assertions as though they were jurisdictional facts capable of defeating the case at inception. That is exactly the procedural shortcut SM Kids, Arbaugh, and Steel Co. forbid.

[3] The Federal Circuit has cautioned against the use of "improper hindsight" and later litigation materials to retroactively characterize earlier conduct or rights where those later materials are not factual findings but merely litigation positions. See Gust, Inc. v. AlphaCap Ventures, LLC, 905 F.3d 1321, 1327–29 (Fed. Cir. 2018). Although Gust arose in a sanctions context, its reasoning is instructive here: later litigation posture cannot be used to perform backward-looking work it is not entitled to do. The district court's reliance on later termination-related developments while declining to decide the legal effect of the underlying agreement reflects the same hindsight problem.

The same is true of Appellant's injury allegations. The complaint alleged lost licensing fees, lost income, lost business opportunities, loss of promotional value, reputational harm, and the collapse of a multimillion-dollar publishing opportunity. Those allegations were concrete enough to satisfy pleading standards. Whether Appellant could ultimately prove the amount, source, or recoverability of each category of damage was a later merits question. It was not a basis for dismissal at the threshold. See Whole Foods, 858 F.3d at 736–39.

In short, the district court did not merely assess jurisdiction. It weighed evidence, credited a competing factual narrative, and resolved disputed questions about assignment, authority, termination, and injury. That was merits adjudication under the label of jurisdiction. Because Rule 12 does not permit that sequence, the dismissal should be vacated.

III. THE DISTRICT COURT ERRED IN DECLARING THE CASE MOOT BECAUSE RETROSPECTIVE RELIEF REMAINED AVAILABLE

After Appellant invoked the time-of-filing rule, the district court shifted from standing to mootness. That shift did not cure the problem. It simply replaced one jurisdictional error with another.

Standing and mootness are distinct doctrines. Standing asks whether the plaintiff had a sufficient stake when the suit began. Mootness asks whether a court can still

grant "any effectual relief whatever" to the prevailing party. Chafin v. Chafin, 568 U.S. 165, 172 (2013). Courts may not collapse those inquiries into one another. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189–92 (2000).

Here, the complaint alleged completed injuries that had already occurred before suit was filed, including lost licensing fees, lost income, lost business opportunities, loss of promotional value, reputational injury, and the collapse of a multimillion-dollar publishing opportunity. Those are retrospective injuries. Damages remained available for them. And where retrospective relief remains available, a case is not moot. Uzuegbunam v. Preczewski, 592 U.S. 279, 286–87 (2021).

The district court nevertheless adhered to dismissal on the theory that the injuries were "no longer" Appellant's.[1] But that reasoning does not establish mootness. At most, it reflects a merits view about later ownership, allocation, or entitlement. Even if later events affected who ultimately controls the underlying rights, they could not make already-accrued injuries disappear. A later dispute over ownership may bear on apportionment, substitution, or ultimate recovery. It does not eliminate the court's power to award effectual relief for injuries already suffered.

That distinction matters. Mootness is not established merely because a defendant disputes whether the plaintiff remains the proper ultimate beneficiary of relief. The question is whether a court can still grant relief of some kind. Chafin, 568 U.S. at 172. Here it plainly could. If Appellant proved her allegations, the court could award damages for completed harms. That is enough to keep the controversy alive. The district court's contrary reasoning created what Appellant accurately described below as a "remedial vacuum": completed injuries were treated as though they belonged to no one, even though damages remained available as a form of effectual relief.[2] Article III does not require that result. To the contrary, the Supreme Court has made clear that a claim for damages satisfies the redressability requirement and defeats mootness so long as some judicial relief remains available. Uzuegbunam, 592 U.S. at 286–87.

Nor may a later private arrangement retroactively extinguish already-accrued claims. In the copyright context, accrued causes of action vest when the alleged injury occurs; later private acts do not erase the existence of the past violation or the judiciary's power to remedy it. See Davis v. Blige, 505 F.3d 90, 103 (2d Cir. 2007). Thus, even assuming arguendo that later events altered the parties' relationship after filing, those developments could not retroactively nullify claims based on injuries that had already accrued.

The district court also did not conduct the right mootness analysis. It did not ask whether monetary relief, declaratory relief concerning past rights, or other retrospective remedies remained available. Instead, it treated a later merits dispute as though it automatically deprived the court of power to act. That is not the mootness inquiry required by Article III. The correct question was whether some form of effectual relief remained possible. Because the answer was yes, the case was not moot.

This Court need not decide the ultimate allocation of rights to resolve this appeal. It need decide only whether retrospective relief remained available for completed injuries alleged in the complaint. It did. The district court therefore erred in recasting the case as moot.

The question is not who ultimately owns the claim, but whether a federal court retained the power to remedy completed injuries alleged at filing.

## IV. OLIVER'S VOLUNTARY DISMISSAL AND LATER CHANGE IN POSITION DID NOT EXTINGUISH APPELLANT'S VESTED CLAIMS OR DEFEAT JURISDICTION

The district court also erred to the extent it allowed Rodney Oliver's post-filing withdrawal and later change in litigation position to shape the jurisdictional

Case: 26-159, 03/31/2026, DktEntry: 59.1, Page 28 of 38

outcome. Those later developments did not extinguish Appellant's vested claims, did not retroactively erase standing that existed at filing, and did not supply a basis for dismissal.

Oliver voluntarily dismissed his own claims. That Rule 41 dismissal terminated only his claims. It did not automatically rescind rights allegedly transferred before suit, did not undo Appellant's asserted enforcement rights, and did not eliminate injuries Appellant alleged she had already suffered by the time the complaint was filed. Jurisdiction is assessed plaintiff by plaintiff. One plaintiff's withdrawal does not retroactively destroy another plaintiff's standing. See Davis v. FEC, 554 U.S. 724, 734 (2008); Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 285–86 (2008).

That principle is especially important here because Appellant promptly notified the district court that Oliver's voluntary dismissal did not terminate her separate role in the case and that she continued to proceed based on her own alleged ownership interest, enforcement rights, and accrued injuries. The record reflects that Appellant expressly stated she remained "a proper party with standing to prosecute her claims."[1] Thus, the court was squarely on notice that Oliver's departure did not, in Appellant's view, end the controversy or eliminate her independent stake in the litigation.

Case: 26-159, 03/31/2026, DktEntry: 59.1, Page 29 of 38

The later procedural sequence only underscores the error. After voluntarily dismissing his own claims, Oliver later reappeared, retained new counsel, and sought intervention for the stated purpose of filing a motion to dismiss.[2] The district court then relied on that post-filing repositioning and related declaration to help shape dismissal. But that is backwards. A former co-plaintiff's later reversal in litigation posture cannot be used to retroactively defeat jurisdiction that already existed when the complaint was filed. At most, such a change creates or sharpens a merits dispute over ownership, authority, scope, or allocation. It does not erase Article III jurisdiction.

This Court's decision in SM Kids, LLC v. Google LLC confirms the point. 963 F.3d 206, 212–14 (2d Cir. 2020). There, the Court explained that disputes over assignment validity and continued ownership go to the merits, not standing. The same reasoning applies here. Whether Oliver later repudiated, contested, or attempted to terminate the April 24 transfer may bear on the ultimate merits. But it does not change the jurisdictional facts that Appellant alleged existed at filing.

Nor does intervention change that result. Intervention is the procedural mechanism by which a non-party becomes a party. See Fed. R. Civ. P. 24. It is not a device for retroactively undoing another party's previously existing standing. Yet the sequence here effectively allowed a non-party or would-be intervenor to shape the

dispositive posture before the merits questions underlying that intervention were properly resolved.[4] That inversion of sequence is particularly troubling where the intervenor's stated objective was dismissal itself.

The Second Circuit's timeliness analysis for intervention reinforces the problem. In assessing intervention, courts consider how long the applicant knew of the interest, prejudice to existing parties, prejudice to the applicant if intervention is denied, and any unusual circumstances. MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 389 (2d Cir. 2006). Here, Oliver was not an unknown outsider who suddenly discovered an interest in the case. He was an original plaintiff who voluntarily exited and later returned in a posture adverse to Appellant. That unusual sequence should not have been used to collapse Appellant's separate claims at the threshold.

The district court's approach also blurred the distinction between who may ultimately prevail and who had the right to be in court when the action commenced. Even if Oliver later adopted a position inconsistent with Appellant's, that would not mean Appellant never had standing. It would mean only that the parties had a merits dispute requiring adjudication under the normal litigation process. Article III does not allow later party repositioning to rewrite history.

[4] Even if intervention were procedurally permissible, the existence and effect of Oliver's later position would still go to the merits of ownership, authority, and allocation. It would not retroactively eliminate standing that Appellant alleged existed at the time suit was filed.

In short, Oliver's voluntary dismissal did not extinguish Appellant's vested claims, and his later intervention posture did not supply a jurisdictional eraser. The district court therefore erred to the extent it relied on his post-filing withdrawal, later declaration, or changed litigation position to dismiss the case.

## V. THE DISTRICT COURT FAILED TO RESOLVE THRESHOLD AUTHORITY AND REPRESENTATION ISSUES BEFORE ALLOWING THEM TO SHAPE THE DISPOSITIVE POSTURE

Separate from the standing and mootness errors, the record reflects repeated efforts by Appellant to obtain clarity regarding who had legal authority to act for the Barry White Family Trust and its trustees. Those concerns were raised before dismissal and were never meaningfully resolved.

Appellant expressly raised the issue in correspondence and docketed filings:

"I have found no evidence of your authorization to do so based on my research of the public court record."

ECF No. 16 at 4–5.

Counsel responded:

"Your statement in the first sentence is rejected in toto."

ECF No. 16 at 5.

And further:

Case: 26-159, 03/31/2026, DktEntry: 59.1, Page 32 of 38

"You can make whatever objections you wish in the lawsuit. You have my response."

ECF No. 16 at 9–10.

Weeks later, defense counsel filed a Notice of Appearance stating that she appeared "on behalf of Defendant Barry White Family Trust by its co-trustees, Glodean White and Jack Perry." ECF No. 27 at 1. But Plaintiffs then explained that no trustee-signed proof of authority had accompanied that filing or the request to treat counsel's letter as a waiver of service. ECF No. 30.

The record reflects the specific challenge:

"We write on behalf of the Barry White Family Trust by its co-trustees, Glodean White and Jack Perry … and on behalf of myself ('Weber')"

ECF No. 26 at 1.

"respectfully request that this letter be deemed waiver of service"

ECF No. 26 at 2.

Appellant responded:

"A lawyer's unsworn letter is not a proper waiver."

ECF No. 30 at 1.

"The Notice of Appearance names 'Glodean White and Jack Perry' as co-trustees, but no trustee-signed authorization to accept or waive service accompanied it."

ECF No. 30 at 1.

"Decline to treat counsel's letter (Dkt. 26) as a valid Rule 4(d) waiver unless it is signed by the defendant or a properly authorized agent."

ECF No. 30 at 2.

"Direct Ms. Weber to file, within 7 days, a short declaration under 28 U.S.C. § 1746 stating … whether she is currently authorized to accept service and/or execute a Rule 4(d) waiver in this action; and … by whom that authority was granted."

ECF No. 30 at 2.

These were not stray complaints. They were threshold Rule 17, Rule 4, capacity, and authority concerns bearing on who possessed legal authority to litigate on behalf of the Trust. See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 464–66 (1980). Yet those issues were not resolved before the court allowed later authority-dependent filings to help shape the dispositive posture of the case. That mattered here because the court ultimately relied on a procedural and jurisdictional narrative shaped in part by parties whose authority Appellant had specifically and repeatedly challenged. Even if this Court does not reach those issues as independent grounds for reversal, the unresolved authority questions reinforce why dismissal at the threshold was improper.

## VI.ON REMAND, THE COURT SHOULD REQUIRE PROOF OF AUTHORITY AND REASSIGN THE CASE

### A. The District Court Should Have Required Proof of Authority Before Allowing Trust-Based Rights To Be Used To Defeat Appellant's Claims

Appellant alleged standing at the time of filing based on a signed written transfer and alleged accrued economic and reputational injuries that occurred before any purported termination. Those allegations were sufficient to invoke federal jurisdiction and required the court to proceed in the proper order: jurisdiction at filing, then merits.

Instead, the district court permitted Dorothy Weber and the Barry White Family Trust to participate in motion practice and assert Trust-based rights in a manner adverse to Appellant's claimed ownership and enforcement rights without first requiring competent proof that Weber was authorized to act on behalf of the Trust or its trustees. Appellant raised this issue below and requested that Weber be required to establish her authority to accept service, waive service, and act on behalf of the Trust, but no sworn proof of trustee authorization was required before the court relied on positions advanced in the Trust's name.

Case: 26-159, 03/31/2026, DktEntry: 59.1, Page 35 of 38

Where a party purports to act on behalf of a trust and seeks to assert rights that affect ownership, enforcement rights, and the disposition of a federal case, the court should require proof of authority to act for the trust. That issue is particularly important where the asserted authority is used in a manner that affects jurisdiction, standing, or the disposition of accrued claims.

Because the district court allowed Trust-based assertions and post-filing ownership narratives to influence dismissal without first resolving the threshold question of authority, the proper course is vacatur and remand with instructions that the district court require competent proof of authority on the record before renewed dispositive motion practice.

Appellant respectfully requests that, on remand, the district court require Dorothy Weber to file a sworn declaration, together with trustee authorization or other competent proof, establishing:

1. Her authority to appear for the Barry White Family Trust and its trustees;

2. Her authority to waive service or otherwise act on the Trust's behalf; and

3. The basis on which the Trust claimed authority to challenge or impair Appellant's asserted ownership and enforcement rights.

B. Reassignment Is Warranted On Remand

When a case is remanded, this Court has authority to order reassignment to a different district judge where doing so would preserve the appearance of justice, ensure that the case is decided under the correct legal framework, or where the record indicates that the original judge has already formed firm views on issues that must be reconsidered on remand.

Here, reassignment is appropriate because the dismissal rested on a procedural sequencing error. The district court acknowledged that standing is determined at the time of filing but then relied on post-filing events and disputed ownership issues to retroactively eliminate standing and declare the case moot. In doing so, the court allowed merits-related disputes and post-filing contractual events to perform jurisdictional work.

If this Court vacates and remands, the case will require the district court to evaluate issues it previously treated as jurisdictional—such as the validity, scope, and effect of the written transfer; the effect of any purported termination; and the existence and scope of accrued damages—as merits issues rather than jurisdictional defects. Reassignment would help ensure that those issues are evaluated under the correct legal framework on remand.

Reassignment is therefore appropriate to preserve the appearance of fairness and to ensure that the case is reconsidered under the proper sequencing required by Article III and this Court's precedent.

RELIEF REQUEST

Appellant respectfully requests that this Court:

1. Vacate the district court's orders dismissing the case for lack of standing and mootness;

2. Remand the case for proceedings on the merits;

3. Instruct the district court to require competent proof of authority from Dorothy Weber and the Barry White Family Trust establishing their authority to act on the Trust's behalf; and

4. Reassign the case to a different district judge on remand.

CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5,436 words, excluding the parts of the brief exempted by Rule 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Date: March 31,2026

__________________________

Nécole Key

Appellant, Pro Se